UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER W. ODEN, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. 3:18-cv-600-GCS |
| WILLIAM B. TRUE, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Christopher W. Oden brings an action against Defendant William B. True pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Oden requests monetary and injunctive relief for unconstitutional conditions of confinement in violation of the Eighth Amendment. Before the Court is Defendant's motion for summary judgment pursuant to the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). For the reasons delineated below, this Court **GRANTS** Defendant's motion.

### FACTUAL ALLEGATIONS

When Oden brought this suit, he was an inmate at the United States Penitentiary in Marion, Illinois ("USP Marion"). (Doc. 1, ¶ 1). According to Oden, Defendant is responsible for failing to remove two additional bunks from cells designed to hold one person. (Doc. 1, ¶ 16-17, 26). Oden alleges that this cell arrangement causes "duress, stress, overcrowding, cell conflicts, assaults, privacy [violations], due process violation[s], and [affects] the mental soundness" of USP Marion inmates. (Doc. 1, ¶ 17). Additionally,

Oden claims that the cell doors, once unlocked, are left open and will not close. (Doc. 1, ¶ 21). Finally, Oden alleges that Defendant failed to remove black mold in certain cells and that the cells experience extreme heat and humidity. (Doc. 1-3, ¶ 9).

On March 23, 2018, Oden filed his complaint with this Court, requesting injunctive relief and monetary damages.[1] (Doc. 1). In its September 7, 2018 screening order, this Court allowed one count to proceed:

> Defendant[] subjected Plaintiff[] to unconstitutional conditions of confinement in Marion USP by overcrowding cells designed for single occupancy, preventing cell doors from closing when they have been opened, and failing to remedy black mold in the vents and extreme humidity in the cells.

(Doc. 135); *Oden v. True,* No. 18-CV-600-MJR, 2018 WL 4283035, at *1 (S.D. Ill. Sept. 7, 2018). This Court dismissed Oden's claims as to black mold in the vents and extreme humidity in the cells on September 30, 2019, finding that Oden failed to exhaust his administrative remedies as to that claim. (Doc. 237). Defendant filed this motion for summary judgment pursuant to the Supreme Court's decision in *Ziglar v. Abbasi* on February 28, 2020. (Doc. 246).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014)(citing FED R. CIV. PROC.

---

[1] Originally, the complaint was filed as a multi-plaintiff lawsuit against several defendants. (Doc. 1). However, Oden and Defendant True are the only parties currently remaining in this suit.

56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine dispute of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, this Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). The Seventh Circuit has explained that Rule 56(a) requires that, "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving him the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in his favor." *Spaine v. Community Contracts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## ANALYSIS

### I.     Oden's Claim for Injunctive Relief

Defendant argues that Oden's claim for injunctive relief is moot because he is no longer incarcerated. Oden does not resist Defendant's motion for summary judgment on this issue. This Court agrees with Defendant that Oden's claim for injunctive relief is moot, entitling Defendant to summary judgment. *See, e.g., Already, LLC v. Nike Inc.*, 568 U.S. 85, 91 (2013)(stating that "[a] case becomes moot – and therefore no longer a 'Case' or 'Controversy' for purposes of Article III – 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'")(quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)). *See also Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011)

(finding a request for injunctive relief moot because the plaintiff was no longer an inmate at the prison in which the suit arose).

## II. Oden's *Bivens* Claim

Defendant argues that, pursuant to the Supreme Court's decision in *Ziglar v. Abbasi*, Oden's conditions of confinement claim represents a new *Bivens* context. Because Oden's claim represents a new *Bivens* context, Defendant asserts that special factors counseling hesitation preclude this Court from extending *Bivens* in this case. Oden counters that the Supreme Court implicitly recognized conditions of confinement claims in *Farmer v. Brennan*, 511 U.S. 825 (1994). Thus his claim does not represent a new *Bivens* context and should be allowed to proceed. This Court, however, finds that Oden's claim does represent a new *Bivens* context in light of *Abbasi*. The Court further finds that alternative remedial structures available to Oden, Congress's unwillingness to create a damages remedy in this context, and separation-of-powers principles all counsel against extending *Bivens* to Oden's claim. Therefore, Defendant is entitled to summary judgment.

### A. A New *Bivens* Context

In 1871, Congress passed 42 U.S.C. § 1983, which authorizes suits for money damages against state officials for violating an individual's constitutional rights. *See Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (2017)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). However, Congress did not provide a damages remedy for constitutional violations by federal government officials. *Id.* In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, the Supreme Court held that, even without statutory authorization, an individual could sue agents of the federal government for damages to

compensate a violation of the Fourth Amendment's prohibition of unreasonable searches and seizures. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Later, the Court extended *Bivens* to two other contexts: Fifth Amendment gender discrimination suits, *see Davis v. Passman*, 442 U.S. 228 (1979), and Eighth Amendment claims for the failure to provide adequate medical care. *See Carlson v. Green*, 446 U.S. 14 (1980).

The first task for a court confronted with a *Bivens* claim is to determine if the claim arises in "a new *Bivens* context." *Abbasi*, 137 S. Ct. at 1859. A new *Bivens* context arises when a case "is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Id. See also Hernandez v. Mesa*, 140 S.Ct. 735, 743 (2020)(stating that the Supreme Court's "understanding of a 'new context' is broad."). The Court explained,

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Abbasi*, 137 S.Ct. at 1860.

Oden's claim, an Eighth Amendment conditions of confinement claim, represents a new *Bivens* context. First, the constitutional right at issue in this case, the Eighth Amendment's prohibition on cruel and unusual punishment, is different than the right at issue in *Bivens* and *Davis.* Second, the Supreme Court in *Abbasi* rejected extending *Bivens* to cover conditions of confinement claims under the Fourth and Fifth

Amendments. Although Oden brings his claim under the Eighth Amendment, the Court's refusal to extend *Bivens* in *Abbasi* strongly indicates that Oden's claim represents a new *Bivens* context. *See, e.g., Schwarz v. Meinberg*, No. 17-55298, 17-56216, 761 Fed. Appx. 732, 734 (9th Cir. Feb. 13, 2019)(rejecting Eighth Amendment conditions of confinement *Bivens* claim because it "resemble[s] the conditions of the confinement claim the Supreme Court rejected in *Abbasi*.").

Finally, despite both claims falling under the Eighth Amendment, Oden's conditions of confinement claim differs meaningfully from the failure to provide medical care claim recognized in *Carlson*. The plaintiff in *Carlson*, the estate of a deceased prisoner, claimed that inadequate medical treatment harmed the prisoner. *See Carlson*, 446 U.S. at 16 n.1. In the instant case, Oden alleges that his overcrowded cell and unlocked cell doors harmed him. Beyond the factual distinctions between *Carlson* and this case, to adjudicate Oden's claim, this Court would have to apply a legal analysis different from the one used in failure to provide medical care claims. *Compare Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)(stating that failure to provide medical care claims must show "an objectively serious medical condition" and "deliberate indifference to that condition."), *with Dace v. Smith-Vasquez*, 658 F.Supp.2d 865, 876 (S.D. Ill. 2009)(stating that a conditions of confinement claim requires a "sufficiently serious" deprivation of "the minimal civilized measure of life's necessities" and that the defendant was "deliberately indifferent.")(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1970)). To support his claim, Oden must show that the overcrowding of his cell or the unlocked cell doors deprived him of something the Constitution guarantees. *See, e.g., Rhodes v. Chapman*, 452 U.S. 337,

347-348 (1981)(examining if double celling led to "deprivations of essential food, medical care, . . . sanitation" or "increase[d] violence . . . . "). This, of course, is a showing that is unnecessary with respect to the failure to provide medical care. Furthermore, the denial of medical care is a constitutional violation, whereas crowded cells or unlocked cell doors, by themselves, are not. *See, e.g., McCree v. Sherrod*, No. 10-1642, 408 Fed. Appx. 990, 992-993 (7th Cir. Feb. 10, 2011)(holding that triple-celling is not per se unconstitutional).

The instant case and *Carlson* are further distinguishable because Oden's claims, like conditions of confinement claims in general, involve a broader range of prison administration activity than failure to provide medical care claims. Any denial of the "minimal civilized measure of life's necessities" can support a conditions of confinement claim. *Rhodes*, 452 U.S. at 347. *See also Witzke v. Femal*, 376 F.3d 744, 751 (7th Cir. 2004) (stating that "[the term 'conditions of confinement'] quite simply encompasses all conditions under which a prisoner is confined for his term of imprisonment.")(quoting *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999)). The broader range of activity subject to conditions of confinement claims increases "the risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Abbasi*, 137 S. Ct. at 1860. *See also Turner v. Safley*, 482 U.S. 78, 85 (1987)(noting that "[p]rison administration is, moreover, a task that has been committed to the responsibility of [the Legislative and Executive] branches, and separation of powers concerns counsel a policy of judicial restraint."). The risk of intruding into the administration of prisons, which is within the province of the Legislative and Executive branches, further supports this Court's conclusion that Oden's claim represents a new *Bivens* context.

B.  **Applicability of *Farmer v. Brennan***

Oden does not argue that his claim is similar to the claim in *Carlson*. Rather, Oden asserts that the Supreme Court extended *Bivens* to Eighth Amendment conditions of confinement claims in *Farmer v. Brennan*, 511 U.S. 825 (1970). The Third Circuit has accepted this argument. *See Bistrian v. Levi*, 912 F.3d 79 (3rd Cir. 2018). *See also Garraway v. Cuifo*, No. 1:17-cv-00533-DAD-GSA (PC), 2020 WL 860028, at *2 (E.D. Cal. Feb. 21, 2020) (concluding that *Farmer* recognized an Eighth Amendment conditions of confinement claim). However, the Court disagrees with the Third Circuit's application of *Farmer*.

The plaintiff in *Farmer* brought a *Bivens* action claiming that prison officials were deliberately indifferent to her safety. *See Farmer v. Brennan*, 511 U.S. 825, 829 (1994). The Court held that "a prison official cannot be . . . liable under the Eighth Amendment for . . . conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety . . . ." *Id.* at 837. The Court remanded the case "[b]ecause the District Court may have mistakenly thought that advance notification was a necessary element of an Eighth Amendment failure-to-protect claim . . . ." *Id.* at 849.

The Third Circuit in *Bistrian* held that the Supreme Court in *Farmer* "recognized a failure-to-protect claim under the Eighth Amendment" for a *Bivens* claim.[2] In support, the Third Circuit noted that the Supreme Court "not only vacated the grant of summary judgment in favor of the prison officials but discussed at length 'deliberate indifference'

---

[2] While, arguably, there may be a difference between failure-to-protect claims and other conditions of confinement claims, some courts have applied the same reasoning underlying *Bistrian* to conclude that *Farmer* recognized conditions of confinement claims. *See, e.g., Garraway*, 2020 WL 860028, at *2; *Walker v. Schult*, No. 9:11-CV-287 (DJS), 2020 WL 3165177, at *3 (N.D.N.Y. May 29, 2020).

as the legal standard to assess a *Bivens* claim . . . ." *Bistrian*, 912 F.3d at 90 (citing *Farmer*, 511 U.S. at 832-849). Additionally, the Third Circuit reasoned that holding otherwise would overrule *Farmer*, and courts are admonished not to "conclude [that the Supreme Court's] more recent cases have, by implication, overruled an earlier precedent." *Bistrian*, 912 F.3d at 91 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).

This Court disagrees with the conclusion reached by the Third Circuit. First, the only question before the *Farmer* Court was the proper standard for deliberate indifference, not whether to extend *Bivens* and recognize an implied cause of action for Eighth Amendment conditions of confinement claims. *See* Brief of Petitioner, *Farmer v. Brennan*, 511 U.S. 825 (1994)(No. 92-7247), 1993 WL 625980, at *i (stating the question presented as "[d]oes the 'deliberate indifference' standard adopted in *City of Canton, Ohio v. Harris* . . . govern Eighth Amendment claims regarding failure to protect prisoners from assault."). *See also Farmer*, 511 U.S. at 832 (stating that "[w]e granted certiorari because Courts of Appeals had adopted inconsistent tests for 'deliberate indifference.'")(internal citations omitted); Brief for the Respondents, *Farmer v. Brennan*, 511 U.S. 825 (1994)(No. 92-7247), 1993 WL 657282 (showing that the defendants made no argument regarding whether the plaintiff had an implied cause of action). Thus, the Supreme Court never considered the *Bivens* issue. *See, e.g.,* Sup. Ct. R. 14.1(a)(noting that "[o]nly the questions set out in the petition, or fairly included therein, will be considered by the Court."). *See also Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995)(stating that "we will not reach questions not fairly included in the petition."); *Mazer v. Stein*, 347 U.S. 201, 208 (1954)(noting that "[t]he Court's consideration will be limited to the question presented

by the petition for the writ of certiorari."). *But see* SUP. CT. R. 24.1(a)(stating that "[a]t its option, however, the Court may consider a plain error not among the questions presented but evident from the record and otherwise within its jurisdiction to decide."). Rather, the Supreme Court's actions in *Farmer* are akin to "assuming without deciding" certain issues to focus on the question presented on appeal.

This becomes clear after considering the Court's analysis in *Hartman v. Moore*, where it analyzed First Amendment issues in the context of a *Bivens* claim in much the same manner it analyzed the "deliberate indifference" standard in *Farmer*. *See Hartman v. Moore*, 547 U.S. 250 (2006). Under the Third Circuit's reasoning, *Hartman* could be construed as recognizing an implied cause of action under the First Amendment. Yet, courts routinely hold that the Supreme Court has not recognized First Amendment *Bivens* claims. *See, e.g., Loumiet v. United States*, 948 F.3d 376, 382 (D.C. Cir. 2020)(holding that despite *Hartman* assuming First Amendment *Bivens* claims existed, the Supreme Court has not recognized a First Amendment *Bivens* claims); *Johnson v. Burden*, No. 18-11937, 781 Fed. Appx. 833, 836 (11th Cir. July 9, 2019)(rejecting argument that *Hartman* recognized a *Bivens* First Amendment retaliation claim). *See also Doe v. Meron*, 929 F.3d 153, 169 (4th Cir. 2019); *Vanderklok v. United States*, 868 F.3d 189, 198-199 (3d Cir. 2017). In fact, the Supreme Court itself has stated it has "never held that *Bivens* extends to First Amendment claims." *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). And, the Court in *Abbasi* most recently reiterated that "*Bivens*, *Davis*, and *Carlson* . . . represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855.

Second, because *Farmer* focused on the proper standard for "deliberate indifference," refusing to recognize a *Bivens* conditions of confinement claims would not overrule its holding. Farmer remains as established precedent as courts routinely apply *Farmer's* holding when analyzing deliberate indifference in § 1983 claims. *See Lewis v. Siwicki*, 944 F.3d 427, 433 (2nd Cir. 2019); *Adams v. Ferguson*, 884 F.3d 219, 227 (4th Cir. 2018); *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017). *See also Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016)(applying *Farmer's* deliberate indifference standard to a *Bivens* failure to provide adequate medical care claim). If, in the future, the Supreme Court extended *Bivens* to conditions of confinement claims, presumably courts would extend *Farmer's* holding to that context as well.

Finally, the absence of any analysis in *Farmer* on whether to recognize a conditions of confinement *Bivens* claim is significant. In other *Bivens* cases, the Court underwent an extensive analysis before extending *Bivens* or declining to do so. *See, e.g., Bush v. Lucas*, 462 U.S. 367, 380-390 (1983)(examining in detail remedial structure put in place by Congress that precluded recognizing a *Bivens* claim); *F.D.I.C. v. Meyer*, 510 U.S. 471, 485-486 (1994)(explaining why *Bivens* remedies are unavailable against federal agencies); *Carlson*, 446 U.S. at 19-23 (stating why the Federal Torts Claim Act did not preclude recognizing a *Bivens* claim). The omission of such an analysis in *Farmer* further precludes finding that the Court recognized a *Bivens* conditions of confinement claim.[3]

---

3   The Third Circuit asserts that such an analysis was unnecessary because the Supreme Court in *Farmer* may have assumed that the failure to protect claim was not distinct from the failure to provide medical care claim in *Carlson*. *See Bistrian*, 912 F.3d at 91. However, this is not an argument that *Farmer* recognized such a claim, but that *Carlson* did. Thus, the proper analysis is the one taken by this Court – whether Oden's claim represents a new *Bivens* context when compared to *Carlson*.

The Supreme Court was unequivocal when it stated in *Abbasi* that it had only recognized *Bivens* claims in *Bivens*, *Davis*, and *Carlson*. *See Abbasi*, 137 S. Ct. at 1855. The Supreme Court has also recently stated that "the expansion of Bivens is 'a disfavored judicial activity[.]" *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020)(citations omitted). The Supreme Court even expressed doubt that the same result would be reached if the Court's three prior *Bivens* cases were decided today. *Id.* at 742-743. In light of these recent pronouncements, this Court takes the Supreme Court at its word and finds that Oden's claim presents a new *Bivens* context.

### C. Special Factors Counseling Hesitation

Having decided that Oden's claim represents a new *Bivens* context, this Court must now ask whether "special factors counsel hesitation" which would preclude extending *Bivens* to this case. *Ziglar*, 137 S. Ct. at 1857 (citing *Carlson*, 446 U.S. at 18). This inquiry examines whether courts, absent congressional action, are "well suited . . . to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1857-58. Special factors include "separation-of-powers principles," *id.* at 1857, the existence of "alternative remedial structure[s]," *id.* at 1858, and "indications that congressional inaction has not been inadvertent." *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988). "In sum, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the courts must refrain from creating the remedy . . . ." *Ziglar*, 137 S. Ct. at 1858. This Court concludes that alternative remedies, Congress's unwillingness to provide a

damages remedy in this context, and giving appropriate deference to prison administrators all "counsel hesitation" in extending *Bivens* to this case.

First, the Bureau of Prisons ("BOP") Administrative Remedy Program and injunctive relief under 18 U.S.C. § 3626 serve as alternative remedial structures for conditions of confinement claims. *See, e.g.*, 18 U.S.C. § 3626 (outlining requirements for actions seeking relief from unconstitutional prison conditions); 28 C.F.R. §§ 542.10-542.19 (outlining BOP Administrative Remedy Program). In this case, Oden first sought relief through the BOP's Administrative Remedy Program. After exhausting his administrative remedies, Oden sought injunctive relief in this Court. Although Oden ultimately failed in obtaining his desired relief, the existence of these alternative remedial structures by itself weighs against extending *Bivens* to this case. *See, e.g., Bush*, 462 U.S. at 388 (noting that deciding to create a *Bivens* remedy "cannot be answered simply by noting that existing remedies do not provide complete relief for plaintiff."); *Schweiker*, 487 U.S. at 425 (disregarding the fact that "[t]he creation of a *Bivens* remedy would obviously offer the prospect of relief for injuries that must now go unredressed.").

Second, Congress's unwillingness to provide prisoners with a damages remedy is telling. *See, e.g., Abbasi*, 137 S. Ct. at 1865 (stating that "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."). By passing the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 *et seq.*, the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e, and the Prison Rape Elimination Act of 2003, 34 U.S.C. § 30301 *et seq.*, Congress had ample opportunity to consider the kinds of remedies appropriate to redress wrongs committed in prison. In none of these acts did

Congress authorize damage remedies. The PLRA, which overhauled the prison litigation system, is particularly significant, because it "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. 1843.

Finally, because "separation-of-powers principles are or should be central to the [*Bivens*] analysis," *Abbasi*, 137 S. Ct. at 1857, this Court cannot ignore that extending *Bivens* to Oden's claim would increase the Judiciary's involvement in "[p]rison administration . . . a task that has been committed to the responsibility of [the Legislative and Executive] branches . . . ." *Turner*, 482 U.S. at 85. The Supreme Court has instructed several times that courts "afford appropriate deference and flexibility to [prison] officials trying to manage a volatile environment." *Sandin v. Connor*, 515 U.S. 472, 483 (1995)(citing cases). *See also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)(noting that "[w]e must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them.").

Extending *Bivens* to Oden's claim would involve the courts in the housing of inmates, which Congress has left largely up to the discretion of the BOP. *See, e.g.*, 18 U.S.C. § 4042(a)(2)(mandating that the BOP "provide suitable quarters and provide for the safekeeping, care and subsistence of all [inmates]."). *See also* 28 C.F.R. § 522.21 (establishing BOP inmate intake procedures, such as interviews "to determine . . . non-medical reasons for housing the inmate away from the general population."); 28 C.F.R. § 541.21 (establishing BOP's Special Housing Units). Overall, alternative remedial

structures, Congress's unwillingness to provide a damages remedy, and separation-of-powers principles all weigh against extending *Bivens* to Oden's claim. Because this Court finds that these special factors "counsel hesitation," this Court declines Oden's request to extend *Bivens* in this case.

## CONCLUSION

For the above-stated reasons, this Court **GRANTS** Defendant's motion for summary judgment (Doc. 246) and **DISMISSES as moot** Plaintiff's prayer for injunctive relief. (Doc. 1). The Court **FINDS** in favor of William B. True and against Christopher W. Oden on Count I of his complaint. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close this case.

**IT IS SO ORDERED.**

Dated: July 20, 2020.

Digitally signed by Judge Sison
Date: 2020.07.20 08:05:18 -05'00'

GILBERT C. SISON
United States Magistrate Judge